## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

|                                        |     |                        |
| -------------------------------------- | --- | ---------------------- |
| CRAIG HILL,                            | )   |                        |
|                                        | )   |                        |
| Plaintiff,                             | )   |                        |
|                                        | )   |                        |
| v.                                     | )   | No. 1:20-cv-00043-SNLJ |
|                                        | )   |                        |
| CARUTHERSVILLE, CITY OF, et al.,       | )   |                        |
|                                        | )   |                        |
| Defendants.                            | )   |                        |

## MEMORANDUM AND ORDER

This matter comes before the Court on review of plaintiff Craig Hill's amended complaint pursuant to 28 U.S.C. § 1915. (Docket No. 11). Having reviewed the amended complaint, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73

(8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented litigant who is currently incarcerated at the Pemiscot County Jail in Caruthersville, Missouri. On February 28, 2020, he filed a civil action pursuant to 42 U.S.C. § 1983. (Docket No. 1). As plaintiff had not paid the filing fee, the Court directed plaintiff to either file a motion for leave to proceed in forma pauperis or pay the full filing fee. (Docket No. 2).

On March 16, 2020, plaintiff filed a motion for leave to proceed in forma pauperis. (Docket No. 6). He also filed supplements to his complaint on March 5, 2020 and March 16, 2020. (Docket No. 3; Docket No. 5). The supplements sought to add defendants and allegations to the original complaint.

2

The Court granted plaintiff's motion for leave to proceed in forma pauperis on July 6, 2020. (Docket No. 10). The Court also reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915, determining that the complaint was subject to dismissal as it did not comport with Rule 8 of the Federal Rules of Civil Procedure. Plaintiff was directed to file an amended complaint on a Court-provided form. Plaintiff submitted an amended complaint on July 23, 2020. (Docket No. 11).

## The Amended Complaint

Plaintiff's amended complaint is brought pursuant to 42 U.S.C. § 1983. It names a total of thirteen separate defendants: the City of Caruthersville; Daniel Caronnichieon; Pemiscot County; Sheriff Tommy Greenwell; Prosecutor Chris Waynes; Prosecutor Mike Hazel; Judge Fred Copeland; Officer Chris Riggs; Officer Marcus Hopkins; Prosecutor Jeremy Lydel; the Missouri Highway Patrol; Nurse Kristen Tate; and Prosecutor William Carter. (Docket No. 11 at 3-8). Defendants are sued in both their official and individual capacities.

The substance of plaintiff's complaint is that he was arrested on three false charges, all of which were eventually disposed in his favor. With regard to the City of Caruthersville, plaintiff alleges that in 2017, the Caruthersville Police Department "manufactured [three] drug related cases," two of which were dismissed by the State of Missouri at the preliminary hearing. (Docket No. 11 at 9). According to plaintiff, the third count was later overturned by the Eighth Circuit Court of Appeals. Plaintiff states that the City of Caruthersville knew or should have known that "the officers in these cases had...tampered with the evidence," and that the police officers who "manufactured" the cases had fifteen felony warrants for their own arrest.

With regard to Daniel Caronnichieon, plaintiff's criminal defense attorney, plaintiff states that Caronnichieon misrepresented him in a case that "was overturn[ed]/reversed by the 8th Circuit

[C]ourt [of] [A]ppeals." (Docket No. 11 at 10). Plaintiff states that the Court of Appeals said his "attorney was ineffective and [his] civil rights [were] violated."

With regard to Pemiscot County, plaintiff states that Pemiscot County deprived him of due process by failing to investigate the cases against him.

As to Sheriff Greenwell, plaintiff alleges that Greenwell knew about "corrupted police officers Marcus Hopkins and Chris Riggs" but failed to make an arrest on this matter in 2017. (Docket No. 11 at 11). Plaintiff states this violated his rights to confrontation and due process.

With regard to Prosecutor Waynes, plaintiff claims that Waynes knew about the "manufacture[d] cases and failed to drop all charges" against him. He further states that two counts were malicious, and the third count was reversed.

Similarly, plaintiff states that Prosecutor Hazel "manufacture[d] all [three] counts on [him]" before leaving office to "play city judge." (Docket No. 11 at 12). He asserts that Prosecutor Hazel knew of the pending felony charges against the officers in his case and failed to issue warrants for their arrest. Plaintiff also accuses Prosecutor Hazel of producing a conspiracy.

With regard to Judge Copeland, plaintiff alleges that Copeland knew "of officers['] [fifteen] felony counts pending in Pemiscot County, and conspired with other county [officials] to deprive [plaintiff] of his civil rights." (Docket No. 11 at 13). This caused plaintiff to lose wages and sustain severe emotional distress.

With regard to Officer Riggs, plaintiff asserts that "Riggs was arrested and charge[d] with stealing government funds," and that at the time of plaintiff's arrest, Riggs had a warrant for his own arrest. (Docket No. 11 at 14). Plaintiff further claims that Officer Riggs "manufacture[d] [three] drug related cases that [were] dismissed."

4

Like Officer Riggs, plaintiff states that Officer Hopkins "was arrested and charge[d] with stealing government funds in 2016." (Docket No. 11 at 15). At the time of plaintiff's arrest, he states that Officer Hopkins was also wanted by the police. Plaintiff further accuses Officer Hopkins of manufacturing three drug related cases that were dismissed.

As to Prosecutor Lydel, plaintiff states that Lydel knew "of the manufacture[d] charges and the felony charges pending on the cops who arrested [him]." (Docket No. 11 at 16). Plaintiff states that this amounts to a civil rights violation.

With regard to the Missouri Highway Patrol, plaintiff states that the Highway Patrol launched an investigation on Officer Riggs and Officer Hopkins. (Docket No. 11 at 17). Upon finishing the investigation, the Missouri Highway Patrol "failed to arrest [Officer Riggs and Officer Hopkins] for stealing CI funds [of] over 25,000 dollars." Plaintiff contends this was a "policy violation." He further states that he was harmed by this failure, because if the Missouri Highway Patrol had arrested Officer Riggs and Officer Hopkins, he would not have been arrested himself.

With regard to Nurse Tate, plaintiff alleges that Tate denied him medical treatment for his "mental disorder." (Docket No. 11 at 18). Specifically, plaintiff asserts that Nurse Tate "denied his Haldol injection in the Pemiscot County Jail…in 2015-2016." As a result of not getting his injection, plaintiff states he was "forced to have a court hearing on the [third] count on [a] drug sale that was reversed." He also states he suffered blackouts, headaches, memory loss, and chest pain, and that he "was out of his mind at the court hearing."

Finally, as to Prosecutor Carter, plaintiff states that Carter was the prosecutor in 2015 and knew "about the corrupted police officers in [his] case and let them act as cops to deprive [him] of

[his] life and manufacture charges on [him]." (Docket No. 11 at 19). Plaintiff also states that Prosecutor Carter was part of an "ongoing" conspiracy and hate crime.

Because of defendants' actions, plaintiff alleges that he has suffered psychological distress, depression, anxiety, and other mental illnesses due to being imprisoned. (Docket No. 11 at 9). He is seeking $1,000,000 in damages from each separate defendant. (Docket No. 11 at 20).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983. The majority of his allegations against defendants arise from his contention that defendants manufactured false criminal charges against him. He has also presented a claim of deliberate indifference to medical needs. For the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Claims Against the City of Caruthersville and Pemiscot County

Local governing bodies such as the City of Caruthersville and Pemiscot County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, a plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can assert the liability of either the City of Caruthersville or Pemiscot County.

6

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8ᵗʰ Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8ᵗʰ Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8ᵗʰ Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8ᵗʰ Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not adequately alleged a municipal liability claim against either the City of Caruthersville or Pemiscot County. First, plaintiff has not demonstrated that either governmental entity has an unconstitutional policy, as none of his facts identify "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." Moreover, none of his facts support the proposition that such an unconstitutional policy statement, ordinance, regulation, or official decision exists.

Second, plaintiff has not shown that his constitutional rights were violated by an unofficial custom. That is, plaintiff has not presented facts showing the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct," much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. To the contrary, plaintiff's factual allegations are focused on a single incident that purportedly happened to him. The Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

8

Finally, plaintiff has not shown that either the City of Caruthersville or Pemiscot County were deliberately indifferent toward training or supervising their employees. In particular, plaintiff has not alleged a "pattern of similar constitutional violations by untrained employees." Rather, as noted above, plaintiff's allegations, such as they are, remain focused on a single incident wherein plaintiff asserts that false charges were manufactured against him.

Based on plaintiff's statements with regard to the City of Caruthersville and Pemiscot County, it appears that plaintiff is premising liability on the fact that the individual defendants were employed by these governing bodies. Under 42 U.S.C. § 1983, however, a governmental entity cannot be held liable solely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

For all the reasons discussed above, plaintiff has failed to demonstrate the liability of either the City of Caruthersville or Pemiscot County based on an unconstitutional policy, custom, or failure to train. Therefore, plaintiff's claims against the City of Caruthersville and Pemiscot County must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### B. Claim Against Daniel Caronnichieon

Plaintiff has presented a 42 U.S.C. § 1983 claim against his defense attorney, Daniel Caronnichieon, alleging that Caronnichieon misrepresented him and was ineffective in his handling of plaintiff's criminal case. "The essential elements of a [42 U.S.C.] § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct

deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 2020 WL 5050364, at \*2 (8th Cir. 2020). An attorney, however, whether appointed or retained, does not act under color of state law, and is not subject to suit under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel"). Because plaintiff has not demonstrated that defense attorney Caronnichieon acted under color of law, the claim against him must be dismissed.

## C. Official Capacity Claims

Plaintiff has sued all the individual defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the

official is an agent"). In order to prevail on an official capacity claim, a plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

### i.    City of Caruthersville and Pemiscot County Employees

Sheriff Greenwell, Prosecutor Waynes, Prosecutor Hazel, Judge Copeland, Officer Riggs, Officer Hopkins, Prosecutor Lydel, and Prosecutor Carter are all alleged to be employed by either the City of Caruthersville or Pemiscot County. Thus, the official capacity claims against them are actually against these governmental entities. As discussed above, however, plaintiff has failed to state municipal liability claims against either the City of Caruthersville or Pemiscot County. It therefore follows that plaintiff's official capacity claims against the defendants employed by these governing bodies must also be dismissed for failure to state a claim.

### ii.    Corizon Employee

Nurse Tate is alleged to be an employee of Corizon. As such, the official capacity claim against her is actually against Corizon itself. To support a claim against a corporation acting under color of state law, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"). Such a corporation cannot be liable on a respondeat superior theory. *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007).

Here, plaintiff presents no factual allegations regarding any policy, custom, or official action on Corizon's part that caused him an injury. Moreover, Corizon cannot be liable simply

because it employed Nurse Tate. Therefore, plaintiff's official capacity claim against Nurse Tate must be dismissed.

### D. Individual Capacity Claim Against Sheriff Greenwell

Plaintiff alleges that Sheriff Greenwell knew "about the corrupted police officers Marcus Hopkins and Chris Riggs and failed to make [an] arrest in this matter in 2017." Liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff's bare, conclusory allegations do not connect Sheriff Greenwell's actions to the alleged violation of one of plaintiff's constitutional rights. Indeed, plaintiff does not assert that Sheriff Greenwell did anything to him whatsoever. To the contrary, his assertions concern Sheriff Greenwell's performance in an entirely different case. Because plaintiff has failed to allege any link between something that Sheriff Greenwell did or did not do, and the deprivation of one of his constitutional rights, he has failed to state a claim. Therefore, the individual capacity claim against Sheriff Greenwell must be dismissed.

**E.  Individual Capacity Claims Against Prosecutors Waynes, Hazel, Lydel, and Carter**

Plaintiff has alleged similar claims against Prosecutors Waynes, Hazel, Lydel, and Carter, accusing them of knowing about the manufactured charges against him, knowing about the charges against Officers Hopkins and Riggs, and of failing to arrest Officers Hopkins and Riggs.

Prosecutors are immune from § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the state in a criminal prosecution. *Id*. On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Prosecutorial immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Sample*, 836 F.3d at 916. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a

prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (explaining "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence").

Here, to the extent that plaintiff is alleging that Prosecutors Waynes, Hazel, Lydel, and Carter wrongfully prosecuted him based on manufactured evidence, these defendants are absolutely immune from suit. As noted above, absolute immunity "covers actions taken to initiate a prosecution, even if those actions are patently improper," and even if the prosecutor is acting maliciously or vindictively. Further, a prosecutor is immune from suit even if he knowingly presents false evidence, misleading evidence, or perjured testimony.

To the extent that these defendants are not immune, plaintiff has still failed to state a claim against him. In order to state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. That is, the complaint must contain enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). "While the court must accept allegations of fact as true...the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

In this case, plaintiff relies on the same repeated legal conclusions for each of the prosecutorial defendants. He continually refers to manufactured evidence, without providing any

14

factual support or explanation as to what that means. He also repeatedly makes reference to the prosecutorial defendants knowing about Officer Riggs and Officer Hopkins, without ever alleging what they knew, when they knew it, and how that knowledge connects them to the violation of plaintiff's constitutional rights. For these reasons as well, plaintiff's claims against Prosecutors Waynes, Hazel, Lydel, and Carter in their individual capacities must be dismissed.

## F.  Individual Capacity Claim Against Judge Copeland

Plaintiff accuses Judge Copeland of knowing about the pending felony counts against Officer Hopkins and Officer Riggs, and of conspiring with other court officials to deprive plaintiff of his civil rights. Because a judicial officer, exercising the authority in which he or she is vested, should be free to act upon their own convictions, judicial immunity provides a judge with immunity from suit. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth*, 891 F.3d at 1090 (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th

15

Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

To the extent that plaintiff is attempting to complain about actions Judge Copeland took while presiding over plaintiff's criminal case, Judge Copeland is immune from such claims. As noted above, when a judge takes a judicial action, he or she is immune from suit, even if acting maliciously, corruptly, or erroneously.

Furthermore, even if Judge Copeland was not immune from suit, plaintiff has failed to state a claim against him. Plaintiff's only allegations consist of the statement that Judge Copeland "[k]new of officers['] [fifteen] felony counts pending in Pemiscot County and conspired with other county [officials] to deprive [him] of his civil rights." The Court must accept plaintiff's allegations as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). However, the Court "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles*, 280 F.3d at 870. Here, there are no facts to demonstrate how Judge Copeland's knowledge of Officer Riggs's and Officer Hopkins's pending felony counts violated plaintiff's constitutional rights. Likewise, plaintiff has provided nothing by way of factual support for the conclusion that Judge Copeland participated in

16

a conspiracy. Therefore, for this reason as well, the individual capacity claim against Judge Copeland must be dismissed.

### G. Individual Capacity Claims Against Officer Riggs and Officer Hopkins

Plaintiff asserts that both Officer Riggs and Officer Hopkins were arrested and charged with stealing government funds. He further claims that both officers "manufacture[d]" three drug related cases against him, two of which were dismissed, and one reversed.

As discussed above, in order to state a claim, plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *See Ashcroft*, 556 U.S. at 679. That is, the complaint must contain enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 550 U.S. at 555. The Court must accept plaintiff's allegations as true. *See Jones*, 915 F.3d at 499. Nonetheless, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). Furthermore, the complaint must "give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

Here, plaintiff's repeated assertions that the criminal charges against him were "manufacture[d]" consists of a legal conclusion. He presents no facts to establish what that means, or to indicate what Officer Riggs and Officer Hopkins actually did to violate his constitutional rights. It is left to the Court to speculate about their actions. Clearly, plaintiff believes that because Officer Riggs and Officer Hopkins stole government funds, they must have acted inappropriately in his case as well. However, he provides no factual enhancement to support this inference.

17

Therefore, the individual capacity claims against Officer Riggs and Officer Hopkins must be dismissed.

### H. Claim Against Missouri Highway Patrol

Plaintiff states that the Missouri Highway Patrol failed to arrest Officer Riggs and Officer Hopkins for stealing government funds. The Missouri Highway Patrol, however, is a state agency and immune from suit.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived her immunity "only where stated by the most express language or by such overwhelming implications from the

18

text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

First, the United States Supreme Court has determined that § 1983 does not revoke the states' Eleventh Amendment immunity from suit in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan,* 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). Second, the State of Missouri has not waived sovereign immunity in this type of action. *See* Mo. Rev. Stat. § 537.600.

The Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Because it is a state agency, the Missouri Highway Patrol is immune from suit, and the claim against it must be dismissed.

### I.   Individual Capacity Claim against Nurse Tate

Plaintiff alleges that Nurse Tate denied him his Haldol injection at some point in 2015-2016, resulting in him having to go to court while "out of his mind." While plaintiff is not entirely clear on this point, it appears this occurred while plaintiff was a pretrial detainee. As such, his constitutional claim regarding medical treatment falls within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly,

a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006).

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

20

In this case, plaintiff states only that he was denied a Haldol injection while at the Pemiscot County Jail sometime in 2015-2016. He does not provide any indication as to when this occurred or how often it occurred. Most importantly, he does not allege why he was not given his injection. To that point, it is not enough for plaintiff to simply conclude that he was denied medical treatment because he was not given Haldol. Instead, he must show that Nurse Tate's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Plaintiff, however, gives no indication as to whether Nurse Tate's actions were intentional, a medical treatment decision, or even a mistake. Likewise, his facts do not show that Nurse Tate acted in a manner approaching actual intent. In short, plaintiff's allegations do not support his conclusion that Nurse Tate was deliberately indifferent to his medical needs. Therefore, the individual capacity claim against Nurse Tate must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this **24ᵗʰ** day of **September**, 2020.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE